Grimke, J.,
delivered the opinion of the whole court. [I have no notes of the opinion delivered. The opinion I formed was in substance the opinion delivered. The following is the substance of my opinion.]
“ In pursuance of a late act of the legislature, which gives the Courts of Common Pleas concurrent jurisdiction with the Courts of Equity, in the appointment of guardians to infants, and persons non compos mentis, a commission of lunacy was issued from the District Court of Pendleton to inquire eoncerning the insanity of one Richards, which commission was returned in due form, and the lunacy established ; wheieupon, application was made to the court to appoint a suitable person as the committee of the lunatic, to have the custody of his person, ami management of his estate. The court upon due deliberation made an appointment which, from any thing that appears, was very reasonable, and authorized by law. In the exercise of this branch of equity jurisdiction the Court of Common Pleas is expressly required by act of assembly of 1808, to proceed according to the principles and rules of equity; and all the powers exercised by Courts of Equity in such casses, may be law. fully exercised by the Courts of Law. In the appointment of a committee for an idiot, or lunatic, the Courts of Equity proceed, generally, upon the rules of law which relate to guardian and ward. It is a principle, of the common law, that no one who has a temptation to remove the infant out of the way, can have the custody of him. This rule had relation in its origin to a species' of tenure which never existed in this country; I mean socage tenure. The next of blood to whom the inheritance could not descend, was entitled to the guardianship in socage. He was guardian of right, by the appoint, ment of the law, and a court was never applied to, to make the ,ap. pointment. Where two or more claimed in equal degree, he who could first get possession of the heir, was guardian. But the guar- *377 (lian in socage could not intermeddle with 'ifte property of the ward. It was committed to the next of kin, to whom the inheritance would descend, as being most inleresíéd in its preservation and improve. ment. y. ,
Note. x See 1 Harg. ch. 757. 2 Inst. 14. Co. Litt. 886, in notes. 2 P. Wins. 264. 1 Fonbl. 51. 2 P. Wms. 544, 638.
“ The general rule, as applifed to the committees of persons of unsound minds, has been strongly reprobated by Lord Chancellor Mac-clesfield as barbarous and uncharitable; and the Courts of Equity have deviated from the rule whenever it has been deemed necessary or proper. The same discretionary power exercised by the Courts of Equity, exists in the Courts of Common Pleas. The Courts of Chancery in England, and our Courts of Equity, are not bound by the common law rule, becauge the power'of appointing committees to lunatics was a branch of the royal prerogatives, and was originally discretionary. '
“ But there are much stronger reasons with us for departing from the uncharitable and unreasonable rule of the common law on this subject, than ever existed in England ; for in this country, inheritances may lineally ascend, as well as descend, which is contrary to a max^ni of the common law ; and, therefore, if the next in succession could not have the custody of an infant, or lunatic, the fathe^ and mother, might in many cases be bereaved of the custody and care of their infant, or unfortunate offspring, although entitled to the guardianship by nature.”